[No. 29221. Department One. March 4, 1944.]

## J. H. CARROLL, *Appellant*, v. UNION PACIFIC RAILROAD COMPANY *et al., Respondents.*[1]

*Rigg, Brown & Halverson,* for appellant.

*Roy F. Shields, Bonsted & Nichoson,* and *Hamblen, Gilbert & Brooke,* for respondents.

BEALS, J.—J. H. Carroll instituted this action against Union Pacific Railroad Company, a corporation, and Albert Regan, one of its locomotive engineers, for the purpose of recovering damages for injuries to person and property

[1]Reported in 146 P. (2d) 813.

suffered by plaintiff as the result of a grade crossing collision between his automobile and a locomotive owned by defendant railroad, and, June 17, 1942, the date of the accident, operated by defendant Regan. In his complaint, after alleging the location of the grade crossing at which he was injured, plaintiff set forth three alleged grounds of negligence on the part of defendants: First, that on approaching the crossing no whistle was blown or bell rung to give notice of the approach of the train; second, that the train was operated along a track so close to an embankment as to prevent plaintiff and others using the grade crossing from making observation along the track sufficient to observe the approach of a train in time to avoid a collision; and, third, in permitting weeds and grass to grow upon the railroad right of way and the embankment to such a height as to prevent necessary observation along the track on the part of persons desiring to use the grade crossing.

Defendants denied negligence on their part, and alleged that the road used by plaintiff was a private road; that plaintiff was familiar with the grade crossing; and that any injuries and damage resulting to plaintiff from the collision with the locomotive were the result of plaintiff's failure to use appropriate care for his own safety in crossing the railroad track.

The cause was tried to a jury, which returned a verdict in favor of the plaintiff and against the defendant railroad alone in the sum of fifteen hundred dollars. Defendant railroad moved for judgment in its favor notwithstanding the verdict, which motion the court granted, and from a judgment dismissing the action as to defendant Regan upon the verdict of the jury in his favor and as to the railroad upon the granting of its motion for judgment in its favor notwithstanding the verdict, plaintiff has appealed.

Error is assigned upon the holding of the trial court that appellant was guilty of contributory negligence as matter of law; upon the court's ruling that the verdict of the jury against respondent railroad alone was equivalent to a finding that notice by bell or whistle of the approach of the

train had been given prior to the collision; and upon the entry of judgment setting aside the verdict in appellant's favor and dismissing the action as against respondent railroad.

In this opinion we shall refer to respondent railroad as respondent, and to respondent Regan by name.

The main line of respondent's railroad runs east and west through the Sawyer ranch, which is located about a quarter of a mile east of the town of Sawyer in Yakima county. On the ranch is a farm road which crosses the railroad tracks at a slight angle from southeast to northwest. For about four years prior to the accident, appellant was in the employ of the owner of the ranch, in charge of the irrigation system, and during this period he and his family occupied a dwelling situated a short distance south of the railroad tracks, and about four hundred feet east of the grade crossing. Prior to this period of regular employment, appellant had worked part time on the ranch during three or four years. Appellant testified that during the term of his full time employment he had used the crossing daily, often as many as a dozen times.

On the day of the accident, at about a quarter before six o'clock in the afternoon, appellant was driving his automobile north on the farm road, at from four to five miles per hour. He was observing the irrigation system in a pear orchard to the east of the road, to ascertain whether or not the system was functioning properly. His brakes were in good condition, and his car was in second gear. He testified:

"Q. You were in low, were you? Low gear? A. I was in second. Q. Second gear. And with your car and the brakes in the condition that they were in, within what distance could you stop your car, going four miles an hour? A. Well, I could have stopped it to a dead standstill. Q. Within a foot or so? A. Sure; practically within the space it took the car to settle, the ground it took the car to set to a dead stop. Q. In other words, you could stop right now, as they say? A. Sure, just as quick as I got my brakes grabbed. Q. And, as I understood, you had, on previous

occasions, you had stopped and let trains go by there? A. Why, sure."

A tractor was following appellant's car along the road at a distance of fifty or sixty feet, the tractor making the noise which usually accompanies such a machine in motion. On the south side of the railroad right of way and to the east of the road along which appellant was proceeding, was a bank, between five and six feet high, rather near the track, and upon this bank and the right of way had grown clover, grass, and weeds, the bank and the weeds obstructing appellant's view along the track to the east as he approached from the south. Appellant testified that as he approached the track he "was looking and listening with all ears and all eyes I had, and I was afraid of that crossing at all times." He knew that he could not see along the track from the point at which he looked, as he testified "at that time you just as well be looking through a black wall." Appellant testified that he was not only aware of the danger of collision with a train, but that he was exercising care to avoid danger from the possible approach of a handcar. Without stopping his car at a point from which he could observe the track, appellant drove his car onto the rails, where he was struck by a westbound locomotive, suffering the injuries to his person and automobile for which he demanded damages.

The verdict of the jury in favor of respondent Regan amounts to a finding by the jury either that appropriate warnings of the approach of the train were given by the engineer by bell or whistle, or that the failure to give such warnings was not a proximate cause of the accident. As to whether or not a whistle was sounded or bell rung, the evidence is conflicting, but the failure of the jury to return a verdict against Regan obviates the necessity of consideration of this matter. This leaves the question of respondent's alleged negligence as set forth in appellant's complaint in the second and third particulars.

The train which collided with appellant's automobile was a special, not running on any regular schedule. This, how-

ever, is unimportant, as a person using a grade crossing must take notice of the fact that trains may be operated along the track outside of regular schedules. Apparently the only unusual danger in connection with the grade crossing was that which appellant incurred of a train approaching from the east along respondent's track, observation of trains from the west at this point (or from the north side of the crossing) being adequate.

The close proximity of the bank to the track was a hazard with which appellant was thoroughly familiar from his many years' use of the crossing. The fact that the hazard was increased by grass and weeds growing upon the right of way and upon the bank was also open and obvious. It does not appear that appellant ever sought to lessen this hazard by cutting the grass or weeds, or that he requested respondent to do so. He accepted the dangerous situation as he found it, and crossed the track from south to north frequently, often as many as six times in a day.

Appellant and several of his witnesses testified that it was impossible for the driver of an automobile, without leaving his car, to see a train approaching from the east until the front bumper of the car was upon the railroad track, which was straight for quite a distance east of the crossing. There is no question but that one approaching the crossing from the south could not see very far along the track to the east until close to the track, but we cannot disregard the physical facts as shown by several photographs introduced in evidence by respondent, which were taken very soon after the accident, and which show the crossing and, from different positions, the view along the track. Appellant does not contend that these photographs do not show the actual situation as it existed at the time of the accident. Indeed, the photographs were admitted in evidence without objection. They show beyond question that the driver of an automobile proceeding as was appellant has at least some view along the track to the east from a point south of the southerly rail. In the course of his testimony, appellant said:

"Q. Now, you said something about expecting to see a handcar? A. Sure, at that time of evening, it wasn't train time, and a lot of evenings, you know, several handcars passing back and forth there, and they make such a little noise until—I was thinking of handcars; I wasn't thinking of trains. Q. You weren't thinking of trains? A. Why, sure; a man looking for handcars, trying his best to see or hear one of them, as big a thing as a train, surely could have stopped. Q. You came down there so if you had seen a handcar, you would have stopped? A. Why, sure. Q. If you had seen a train, you would have stopped? A. Why, sure. I could have stopped when I was further away."

Appellant was careful to testify that he was proceeding very slowly, that his brakes were in good condition, and that he could have stopped his car almost instantly. He testified that he anticipated the possibility that a handcar might be moving along the track, and that he was on guard against such a contingency. The portion of his testimony above quoted is not consistent with his other testimony to the effect that the driver of an automobile could not see any distance along the track until the front bumper of the car was on the rail.

Even if appellant could see down the track to the east only to the extent to which he testified, under the circumstances disclosed by the record he could not cast the entire burden of responsibility for an accident upon respondent, he having entered upon a track along which was approaching a train which appellant neither saw nor heard.

 In granting respondent's motion for judgment in its favor notwithstanding the verdict, the trial court properly construed the rule of law applicable to such a situation, and considered the case of *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265, in which we said:

"A challenge to the sufficiency of the evidence, a motion for nonsuit, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict admits the truth of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant, and in the light most favorable to the plaintiff.

"A court will not be justified in taking from the jury the question of contributory negligence unless the acts committed by the party charged therewith are so palpably negligent that there can be no two opinions concerning them."

In the case of *Haaga v. Saginaw Logging Co.*, 169 Wash. 547, 14 P. (2d) 55, we said:

"We have repeatedly stated that the general rule regarding the standard of care to be exercised by those traveling upon a highway is that they must exercise a reasonable care under the existing circumstances. We have, in many of our decisions, given judicial expression to what is commonly and currently accepted as a well-known fact, i. e., that a railroad crossing is a proclamation of danger, and that those who propose to enter its zone must govern themselves accordingly.

"Recognizing this principle, we have added to the usual rule of 'reasonable care under the circumstances,' the specific requirement that the traveler approaching a railroad crossing must look and listen. Accompanying this statement of the rule is the added requirement that the observation must be made at a point or from a position where it would be effective."

In the case of *Keene v. Pacific Northwest Traction Co.*, 153 Wash. 310, 279 Pac. 756, is found the following:

"If he [plaintiff] could not see whether or not he was entering a zone of danger in venturing onto the railway track, it was his duty to take some other means of ascertaining the fact. He could not abandon all caution, take a chance on escaping injury, and, failing to escape, charge his delinquency to another."

The rule is well stated in the case of *Benedict v. Hines*, 110 Wash. 338, 188 Pac. 512:

"There is no dispute as to the essential and controlling facts. Together with the physical facts disclosed by the oral evidence, photographs, and maps of the scene, they stand as a unit to convince one of the charge of contributory negligence, as a matter of law. . . .

"To the extent the box cars were an obstruction to the use of the senses of hearing and seeing, they were at the same time obvious, and together with the disadvantage for hearing caused by the noise of the automobile, accentuated the constant and lively suggestion of danger at the crossing.

It was a situation that in common prudence demanded more caution than if the obstructions were less or nonexistent, according to the familiar rule: 'What would be due care under certain circumstances would not be due care under other and different circumstances.' "

Appellant relies upon the cases of *Schofield v. Northern Pac. R. Co.,* 4 Wn. (2d) 512, 104 P. (2d) 324, and *Hendrickson v. Union Pac. R. Co.,* 17 Wn. (2d) 548, 136 P. (2d) 438. In these cases a situation was presented which this court held amounted to a trap by which the plaintiffs were misled into mistaking the degree of care appropriate to the occasion. These cases are not in point here, as appellant was thoroughly familiar with the grade crossing and all the surrounding conditions, and testified that he fully realized the dangers incurred by one using the grade crossing as did appellant upon the occasion of the accident.

There is some conflict in the evidence as to the amount of noise made by the tractor which was following appellant's car. That is not a material matter. Appellant testified that he was on the lookout for any approaching handcar, which, at least as a general rule, carries neither bell nor other signal device, and, as appellant testified, makes very little noise. If appellant was making such observation of respondent's track to the east that he would have been aware of the presence of an approaching handcar in time to stop his automobile before entering upon the track, it is difficult to understand why he did not observe the approach of the much larger and noisier locomotive.

In the recent case of *Morris v. Chicago, M. St. P. & Pac. R. Co.,* 1 Wn. (2d) 587, 97 P. (2d) 119, 100 P. (2d) 19, appears the following:

"The doctrine of contributory negligence is based upon the principle that no person is ever absolved from exercising reasonable and ordinary care for his own safety.
. . .
"As to the right of the court to determine that a person is guilty of contributory negligence, as a matter of law, we stated, in the early case of *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799:

" 'There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law. . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. . . . And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. . . . If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury.' . . .

"One who approaches a railway crossing on a public highway is as much under the duty of keeping a lookout as is the railway company; and with knowledge that the railway company has the right of way, and cannot instantly stop its trains to avoid accidents, it becomes his duty to use every means which a reasonably prudent person would use, under the existing circumstances, to avoid a collision.

"In the case of *Mouso v. Bellingham & N. R. Co.*, 106 Wash. 299, 179 Pac. 848, we announced the following rule, which has since been consistently followed:

" 'In a case like this, where the physical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and therefore cannot differ.' . . .

"The above cited cases bear out the general rule that, where any condition is present which tends to obscure the view of one approaching a railroad crossing, a greater degree of care, proportionate to the conditions prevailing, is required of such one in determining and observing the danger of approaching trains."

The trial court correctly construed the verdict of the jury in Regan's favor as equivalent to a finding by the jury that the locomotive bell or whistle was sounded upon the train's approach to the crossing, or that, if such warning was not given, the omission to give the same was not a proximate cause of the injury, because, if it had been given, appellant would not have heard it because of the noise made by the tractor which was following. This latter matter was called to the attention of the jury by an instruction of the court, which instruction is not questioned here.

No two grade crossing accident cases are exactly alike,

but the principles which govern the question here presented have been frequently considered by this court.

■ Examination of the record convinces us that the trial court properly held that from the evidence it appeared beyond question that appellant had been guilty of contributory negligence which materially contributed to his injuries, and that, for this reason, as matter of law, appellant was precluded from recovering judgment against respondent.

The trial court then properly granted respondent's motion for judgment in its favor notwithstanding the verdict, and the judgment appealed from is accordingly affirmed.

SIMPSON, C. J., STEINERT, and JEFFERS, JJ., concur.

BLAKE, J. (dissenting)—That the defendant was negligent in maintaining a condition on its right of way which obscured the vision of travelers approaching the crossing, is apparently conceded. In such a situation it has been held by this court that the question of contributory negligence is for the jury. *Ladouceur v. Northern Pac. R. Co.*, 6 Wash. 280, 33 Pac. 556, 1080; *Steele v. Northern Pac. R. Co.*, 21 Wash. 287, 57 Pac. 820; *Stewart v. Northern Pac. R. Co.*, 96 Wash. 486, 165 Pac. 377; *Hubenthal v. Spokane & Inland Empire Co.*, 97 Wash. 581, 166 Pac. 797. Speaking for the court in the *Steele* case, Judge Dunbar said, p. 299:

"In *Grand Trunk Ry. Co. v. Ives*, 144 U. S. 408 (12 Sup. Ct. 679), the rule was laid down that, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence, the determination of the matter is for the jury.

"The facts in that case were that, while the plaintiff, who was an old man, was driving towards the railroad crossing, and looking at a train that had just crossed the road from one direction, and while the noise caused by it was still quite distinct, he drove on toward his destination, and just as he had reached the track, and while apparently watching the train that had passed, he was struck by another train, coming from another direction,—a case not dissimilar in principle from the one at bar.

" 'It is frequently stated that, when the facts are undisputed or conclusively proved, the question of negligence is to be decided by the court. A better opinion, however,

would seem to be that, in order to justify the withdrawal of the case from the jury, the facts of the case should not only be undisputed, but the conclusion to be drawn from those facts indisputable. Whether the facts be disputed or undisputed, if different minds ·may honestly draw different conclusions from them, the case should properly be left to the jury.' 2 Thompson, Negligence, p. 1236.

"And as showing the impropriety of judges taking this question from the jury, except in cases showing undisputed and palpable negligence, it is said by Mr. Cooley, in his work on Torts (p. 802):

" 'If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training and temperament of the judge himself; a rule which his predecessor might not have accepted, and which his successor may reject, and upon which a court of review may reverse his action, not because the facts are differently regarded, but because judges are men and men are different. As has been said in one case, it must be a very clear case, indeed, which would justify the court in taking upon itself this responsibility. For when the judge decides that a want of due care is or is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the conduct of the party by that, turns the case out of court or otherwise disposes of it upon his opinion of what a reasonably prudent man ought to have done under the circumstances.' "

That the majority in the instant case have assumed the functions of the jury in weighing the evidence and appraising the credibility of witnesses, is apparent from the following paragraph of the opinion:

"Appellant was careful to testify that he was proceeding very slowly, that his brakes were in good condition, and that he could have stopped his car almost instantly. He testified that he anticipated the possibility that a handcar might be moving along the track, and that he was on guard against such a contingency. The portion of his testimony above quoted is not consistent with his other testimony to the effect that the driver of an automobile could not see any distance along the track until the front bumper of the car was on the rail."

I dissent.