JOHN WHITE, PLAINTIFF-APPELLANT, v. ELLISON REALTY CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued June 5, 1950—Re-argued on Court's own motion June 19 1950—Decided June 27, 1950.

230

*Messrs. Hyman W. Rosenthal* and *Harry Chashin* argued the cause for appellant. *Messrs. Marcus & Levy,* attorneys.

*Mr. Sidney M. Schreiber* argued the cause for respondent. *Mr. Roger F. Lancaster* on the brief. *Messrs. McKeown, Schreiber & Lancaster,* attorneys.

The opinion of the court was delivered by

WACHENFELD, J. The plaintiff appeals from a judgment of dismissal entered in the Superior Court, Law Division, on motion of the defendant made at the conclusion of the plaintiff's case. The appeal was taken to the Appellate Division of the Superior Court and certified here on our own motion.

The action arose out of injuries sustained by the plaintiff by reason of the falling of an elevator constructed on the exterior of the defendant's building. The plaintiff was at the time an employee of Sears, Roebuck & Company, the tenant of a portion of the defendant's premises on Ellison Street in Paterson.

The lease in effect at the time of the accident was entered into on June 17, 1946, between Sears, Roebuck and Dixon Properties, Inc., the defendant's predecessor in title. The lease specifically demised "the basement only, 140 x 48, containing approximately 6,760 square feet" and in the fourth paragraph contained these words: "Landlord hereby cove-

nants that he will, at his own expense, keep in good condition and repair during the term of this lease * * * elevators * * * in or about the demised premises." There was no elevator in the building at the time the lease was made nor did the landlord by the terms of the instrument obligate itself to install one. The lease did provide, however, for an increase in the rent "when hydraulic or electric lift is installed."

Dixon Properties had the elevator installed on September 11, 1946, and the defendant acquired title to the premises by conveyance on October 18, 1946. At the time of the conveyance the officers and stockholders of the defendant were the same persons as the officers and stockholders of Dixon Properties.

The accident occurred on November 1, 1946. On several occasions prior thereto the elevator had stuck and otherwise failed to operate properly. This had been called to the attention of Nichimson, the president of the defendant and its predecessor company. On one occasion he said: "I will get it fixed," and on another: "Take your time, I will fix it for you." When it was pointed out to him that a nut on the motor of the elevator had come loose, he said: "O. K., I will fix it right away." Nichimson among other duties had the job of general maintenance and repair of the premises and had personally attempted to make repairs to the elevator before the accident.

The lift was used primarily by the tenant, Sears, Roebuck, in transporting its goods to and from the basement. It was, however, in a common yard accessible to all the tenants of the defendant and persons other than employees of Sears, Roebuck used it on occasions. One such occasion was in the latter part of October, when the defendant converted the heating system of the building from coal to oil. This took approximately two weeks, during which the elevator was used regularly by a crew of about eight men engaged in the conversion.

On November 1st plaintiff loaded shingles on the elevator in the basement, went upstairs and, operating the elevator from there, raised the platform to a height of thirty to thirty-six inches above the ground. He then loaded the shingles on

a truck which departed. The plaintiff tried to lower the elevator but it stuck. He got on the platform and attempted to operate it by using the control cords but still the platform would not move. He requested the assistance of one Hermanie, an employee of another tenant of the premises who happened to be present. Hermanie put his hands on the platform and moved it from side to side, a process which in the past had restored the operation of the elevator when it became jammed. As soon as Hermanie did this, the platform crashed into the basement. The plaintiff went down with it, sustaining the injuries which are the basis of this action.

The complaint was in one count and alleged, among other things:

"* * * said defendant and its agents violated their duties in these respects in that they carelessly and negligently failed to plan and construct, and keep and maintain said premises and more particularly a certain public and common elevator, hoist or lift therein contained, with due construction and regard for the safety and well-being of tenants, tradesmen, deliverymen, warehousemen and employees, or other such invitees, with good and standard workmanship and design, in a sound or proper state and condition and in a suitable and fit fashion for the purposes for which said elevator, hoist or lift was intended, held out and apparently adapted and failed to examine and inspect it, find and discover all faulty and improper states and conditions thereof and properly attend to and remedy the same and failed to keep, conduct and operate said instrumentality in good order and safe and proper manner, equipped with sound and proper safety devices and appliances and failed to disclose or make known to such invitees the existence of latent, concealed or other dangers or defects thereof in construction, condition or operation of which it or its agents knew or ought to have known so as in no wise to create or permit the creation of a menace to the persons of those lawfully using the said elevator, hoist or lift in violation of the local ordinances and laws of the State in such case made and provided."

At the trial the plaintiff sought to amend his complaint by adding a count in nuisance. The court below denied his motion on the ground that an action in nuisance was barred by the statute of limitations at the time the motion was made.

The case was tried before a jury but at the conclusion of the plaintiff's testimony the trial court, on the defendant's

motion, entered judgment for dismissal on the grounds here-inafter commented on.

The appellant first cites as error the trial court's action in excluding the amendment to add a count in nuisance. We think the court ruled correctly in this respect. The complaint was sufficiently broad in its wording to embrace the theory of nuisance and to support whatever evidence the plaintiff proffered showing the maintenance of the elevator in an unsafe condition so as to render its use dangerous to persons lawfully on the premises. The trial court's denial of the motion to amend did not limit the appellant's proof under the theory on which he tried the case.

The appellant next urges the trial court erred in granting the defendant's motion for dismissal. The court based its motion on a finding "* * * as a matter of law, that the plaintiff has failed in discharging the burden of proof to exclude all other outside intervening causes" and upon a further finding "* * * as a matter of law, that on the plaintiff's own testimony the plaintiff, with knowledge of the dangerous character of this instrumentality, was guilty of contributory negligence or assumed the risk under all of the facts in the case."

The intervening cause which operates to bar a plaintiff's recovery in a negligence action must be a culpable and efficient cause. *Woschenko v. C. Schmidt & Sons*, 2 *N. J.* 269 (1949). An efficient cause is "the one that necessarily sets the other causes in operation." *Batton v. Public Service Corporation of N. J.*, 75 *N. J. L.* 857 (*E. & A.* 1908); *Kelson v. Public Service R. R. Co.*, 94 *N. J. L.* 527 (*E. & A.* 1920). It is the "act or omission which directly brought about the happening complained of and in the absence of which the happening complained of would not have occurred." *Silverstein v. Schneider*, 110 *N. J. L.* 239 (*E. & A.* 1933); *Batts v. Joseph Newman, Inc.*, 3 *N. J.* 503 (1950).

The intervening cause referred to by the court below consisted of the plaintiff's act in persuading Hermanie to move the elevator platform from side to side while the plain-

tiff stood upon it. The proof does not show this action to have been the efficient, proximate cause of the shearing of the metal pin and the subsequent crash of the elevator, nor to have played any part in producing these results. It indicates, on the contrary, the shearing was caused by the installation of the hoist in such a manner that, when it was raised to its full height, the hook at the top hit the housing, placing an undue strain upon the shear pin. The condition had been specifically called to Nichimson's attention several days before the accident and evoked a promise from him to have the necessary repairs made. In this state of the evidence, whether the plaintiff's act constituted an intervening, efficient cause was not a matter of law to be decided by the court but was an issue of fact to be submitted to the jruy.

We reach a like conclusion on the question of the plaintiff's contributory negligence or assumption of risk. These legal concepts are virtually identical, *Hammond v. County of Monmouth*, 117 *N. J. L.* 11 (*Sup. Ct.* 1936), and are ordinarily questions for the jury. *Siggins v. McGill*, 72 *N. J. L.* 263 (*E. & A.* 1905) ; *Van Pelt v. Sturgis*, 102 *N. J. L.* 708 (*E. & A.* 1926) ; *Wright v. A. J. M. Holding Co.*, 130 *N. J. L.* 239 (*Sup. Ct.* 1943). Here, the plaintiff stood on a hoist designed to lift one ton and having a breaking point of twenty tons. There was no other cargo on the platform. He asked Hermanie to shake the platform, a method of inducing it to resume operation which had on at least one previous occasion been advocated by the defendant's president and maintenance man. Whether the plaintiff was on notice that the elevator was an instrumentality of a "dangerous character" by reason of its having been stuck before or whether he was reasonably entitled to assume that it was in a safe and usable condition, especially in light of Nichimson's promises to render it so, was a question of fact for determination of the jury.

"Unless it is established by the evidence beyond fair debate that plaintiff was negligent, and that his negligence directly contributed to the injury complained of, a motion to nonsuit or direct a verdict will be denied. * * * Where fair-minded men might honestly differ

as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury." *Lipschitz v. N. Y. & N. J. Produce Corp.,* 111 *N. J. L.* 392 (*E. & A.* 1933); *Schwartz v. Rothman,* 1 *N. J.* 206 (1948); *Antonio v. Edwards,* 5 *N. J.* 48 (1950).

█ In this class of case, the primary question presented for the jury's consideration and determination is the measure of control retained by the landlord over that which caused the injury. If it is a part of the demised premises and under the exclusive control and supervision of the tenant, the landlord has been held not liable for injuries to third persons even though he has promised, subsequent to the execution of the contract of lease, to make needed repairs and has failed to do so. *Clyne v. Helmes,* 61 *N. J. L.* 358 (*Sup. Ct.* 1898). In the *Clyne case,* the court held such a subsequent promise to be without consideration and, therefore, not one which would give a right of action to a third party for injuries sustained through a breach of it. The court added, by way of *dictum,* that even if the promise had been made to the tenant to induce him to enter into the lease, its breach would give rise to no right of action in third parties not in privity of contract or leasehold estate with the landowner.

The principle as determined there has been the subject of much criticism and comment in succeeding cases and the views supporting and opposing it are set forth at great length in *Colligan v. 680 Newark Ave. Realty Corp.,* 131 *N. J. L.* 520 (*E. & A.* 1944), where the opinion below was affirmed by an evenly divided vote. Adherence to the doctrine of the *Clyne case* was supported by Justice Case and its abolition vigorously advocated by Justice Heher. It was referred to recently in *Ceccato v. Chiara,* 4 *N. J. Super.* 140 (*App. Div.* 1949), where the Appellate Division opined hopefully: "It has not yet been overruled."

The soundness of the principle enunciated was questioned by the trial court here, which had no hesitancy in subscribing to the views expressed by Justice Heher in the *Colligan case* but which properly followed the law as determined, holding

itself bound to do so until it was either overruled or otherwise changed. The dissatisfaction that has been expressed and the controversy the decision has caused will undoubtedly shortly present it in such form as to require definitive action either affirming the doctrine or overruling it. That occasion, however, does not arise in this instance.

The rule of *Clyne v. Helmes, supra,* does not apply to portions of the landlord's property not demised to the tenant but retained in the possession and control of the landlord for the common use of all the tenants and those having lawful occasion to visit them. With respect to such portions of the property, "the landlord is under the responsibility of a general owner of real estate who holds out an invitation to others to enter upon and use his property, and is bound to see that reasonable care is exercised to have the passageways and stairways reasonably fit and safe for the uses which he has invited others to make of them." *Siggins v. McGill, supra.* Under this doctrine, the landlord has been held liable for injuries occasioned by a falling ceiling or an unlighted stairway where the part of the premises in which the cause of the injury occurred was in his possession and control. *Perry v. Levy,* 87 *N. J. L.* 670 *(E. & A.* 1915) ; *Stathos v. Bunevich,* 107 *N. J. L.* 269 *(E. & A.* 1931) ; *Shemin v. Steinberg,* 117 *N. J. L.* 458 *(Sup. Ct.* 1937) ; *Monohan v. Baime,* 125 *N. J. L.* 280 *(E. & A.* 1940).

The principle applies equally to an elevator which is provided for the use of more than one tenant and over which the landowner retains control.

"The landlord having assumed the duty of maintaining an elevator for the common use of two of the tenants in its building was under a duty to exercise reasonable care to maintain the elevator in proper working order. It would have been error, under the proofs adduced, to have taken the case from the jury since they could find, as they did, from the evidence that the landlord had constructive notice of a defective condition (slack cables) which might have been remedied before the occurrence by the exercise of reasonable care." *Guensch v. Third Presbyterian, &c., Newark,* 109 *N. J. L.* 78 *(E. & A.* 1932).

In the case *sub judice,* there is an abundance of evidence bearing upon the question of whether control of the elevator was retained by the defendant or was given over to the tenant. First, there are the provisions of the lease itself demising "the basement only," giving the dimensions of the area rented and setting forth the landlord's undertaking to keep the elevator in good condition and repair. Added to this, there are the specific promises of the defendant's president to have the elevator fixed and his attempt to fix it himself. There is, too, the fact that the repairs after the accident were made on the order of the defendant and paid for by it, which is competent evidence on the question of who had control and the duty of maintenance and repair. *Perry v. Levy, supra.*

There are physical facts which should properly be considered by the jury in deciding the question before it. The elevator was located outside the building, as were the control ropes which operated it. In this position, it was equally accessible to all tenants and the proofs show it was, in fact, used by others than the employees of the basement tenant. All these things tend to show the retention and control of a common facility by the landlord.

There are, on the other hand, certain factors present in the case which tend to support the defendant's contention that the elevator was part of the demised premises and under the exclusive control of Sears, Roebuck, the tenant of the basement. One of these is the provision in the lease that, upon installation of a lift, the rent would nearly triple, rising from $100 a month to $275. This suggests the installation was for the primary, and perhaps exclusive, benefit of this particular tenant. Considered in conjunction with all the other evidence in the case, it might give rise to an inference of exclusive control of the facility in the tenant.

The mere recital of the conflicting evidence is sufficient to establish that there are issues of fact raised here which are properly the subject of the jury's and not the court's determination. *Schwartz v. Rothman, supra; Antonio v. Edwards, supra.* The decision of the court below that, as a matter of

law, the plaintiff had failed to establish proximate cause and was properly chargeable with contributory negligence or assumption of risk constituted error requiring reversal.

Lastly it is urged that the court below excluded material and relevant evidence concerning (1) evidence of standard engineering practices in Paterson; (2) the condition of the elevator on September 30th, more than two weeks prior to the conveyance of the premises to this defendant; and (3) Section 311 of the Building Code of the City of Paterson.

It is difficult in each of the cited instances, and we have no doubt that the trial court encountered the same problem, to ascertain from the record the purpose for which the evidence in question was offered. Invariably it was offered initially on one theory and in the course of argument between counsel and colloquy with the court its admissibility was urged on another. The proffered evidence may be admissible on retrial if it can be shown that it relates to and tends to prove the allegations of the complaint upon which the plaintiff is relying in proving his case. We having determined the complaint is broad enough to permit proof on the theory of nuisance, the admissibility of the evidence in question must be re-evaluated in the light of this determination.

The judgment is reversed without costs and remanded for trial *de novo*.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD and ACKERSON—4.

*For affirmance*—Justices CASE, OLIPHANT and BURLING—3.