[No. 35791. Department Two. December 21, 1961.]

WARD PAULLUS, *Appellant,* v. J. B. FOWLER *et al., Respondents and Cross-appellants.**

*Reported in 367 P. (2d) 130.

*Del Cary Smith* and *Del Cary Smith, Jr.,* for appellant.

*Gibson & Palmer,* for respondents and cross-appellants.

OTT, J.—This is an appeal from a judgment ordering specific performance of a contract to sell real and personal property.

Prior to March 8, 1956, Ward Paullus, a single man, commenced negotiations with R. L. Martin, a single man, for a lease of his Farm Unit 126, Irrigation Block 72, Columbia Basin Project, in Grant County, Washington, and of his farm machinery and equipment, upon a cash rental basis. A lease agreement for a term of four years, terminating December 31, 1959, together with an option to purchase, escrow agreement, escrow instructions, bill of sale, and deed (in the event the option to purchase was exercised) was prepared and submitted by Paullus to his attorney in Willows, California, for approval. April 4, 1956, the attorney approved the documents, with additional changes which he suggested be made by interlineation and deletion. His letter in this regard reads in part as follows:

"My examination of the documents above referred, and which I am returning herewith, discloses that the papers as redrafted, with one exception, meet the objections which I pointed out in my letter to Mr. Paullus. The one exception can easily be corrected and appears in paragraph no. 1 of the Option to Purchase. In the paragraph referred to, the final sentence provides that the option may be exercised at the time the $9,000.00 rental is paid to Ward Paullus. To correspond with the original sales contract I believe this provision should be that the option shall be exercised within a fixed period after payment of the sum of $9,000.00, otherwise the option to be forfeited.

"When the purchase option is changed as last above indicated, I would recommend that Mr. Paullus execute the various papers if the same meets with his approval."

The suggested corrections were made, by interlineation and deletion, only upon the original copy of the option to

purchase, and were initialed by both parties. As corrected, the option to purchase then provided:

"1. *This option shall be exercisable at any time subsequent to the 1st day of November, 1959, and prior to the 31st day of December, 1959, at which time the same shall expire*; or in the event the 1/3 crop rental provided in the herein referred to lease, should provide the agreed $9000.00 rental for the 3 year lease period prior to said dates above mentioned, then said option shall be exercised at the time the $9000.00 rental is paid to Ward Paullas [*sic*].

"2. In the event said R. L. Martin desires to exercise said option he shall, at any time during said period, give written notice thereof to the said grantor or to his agent, the National Bank of Commerce of Seattle, Quincy Branch.

"3. In the event of the exercise of said option the purchase price for the hereinabove-described real property shall be the sum of twenty-eight thousand five hundred and no/100 ($28,500.00) dollars, and for such above described personal property, the sum of one thousand five hundred and no/100 ($1500.00) dollars. Said sums may at the option of the optionee-lessee-purchaser be paid either in cash or *lessor agrees to execute unto lessee a real estate contract providing for payments of not less than two hundred and no/100 ($200.00) dollars per month and a conditional sales contract for the personal property providing for payments of not less than one hundred and no/100 ($100.00) dollars per month,* with full power of substitution in optionee-lessee-purchaser, with interest at 6% per annum on deferred balances from date of exercise of option." (Italics ours.)

April 7, 1956, the parties executed the lease agreement, the option to purchase, escrow instructions, affidavit describing conveyance of project lands in accordance with the requirements of the Bureau of Reclamation, the warranty deed, and bill of sale.

When the documents were delivered to the Quincy Branch of the National Bank of Commerce of Seattle, that bank refused to accept the escrow agent responsibility, and Gibson and Palmer, attorneys at law, assumed the responsibility of acting as escrow agents, with the knowledge and consent of the parties.

August 30, 1957, R. L. Martin assigned the lease and the option to purchase to J. B. Fowler and Wilnoree Fowler,

his wife. The rental payments were made by R. L. Martin and J. B. Fowler, during their respective tenancies of the premises, to Gibson and Palmer.

September 1, 1958, Ward Paullus sent to Gibson and Palmer a document designated as an "Assignment," which provided:

"Whereas a lease and option agreement dated April 7, 1956 was executed by Ward Paullas [sic] and R. L. Martin for the rent and sale of Farm Unit 126, Irrigation Block 72, Columbia Basin Project, Grant County, Washington, together with certain farm equipment, and whereas, Gibson and Palmer are acting as escrow agents in said matter, I hereby authorize and assign and direct said escrow agents to disburse from funds in said escrow, the following:

"1. sufficient funds to satisfy the judgment of H. A. Sandwick upon receipt of a satisfaction of judgment.

"2. attorneys fees in the sum of $50.00.

"3. any recording fees paid by escrow agents in behalf of Ward Paullas [sic].

"4. $159.00 for title insurance policy

"I further direct said escrow agents to deliver to my attorney Robert S. Campbell Jr., Box 1525, Moses Lake, Washington, all escrow papers when authorization to do so has been received by you from J. B. Fowler or his attorney, Wallis Friel.

"In the event that there are funds in excess of the amount which you are authorized to disburse, I direct that said funds be disbursed to Robert S. Campbell Jr."

September 3, 1958, Wallis W. Friel, as attorney for J. B. Fowler, wrote a letter to Robert Campbell, Jr., attorney for Paullus, advising him that there was some ambiguity as to when the payments should begin after the option was exercised, but that the payment being made that day by Fowler on the F.H.A. mortgage would bring the total rental payments to $9,000. Mr. Friel's letter stated:

" . . . At any rate, this letter will serve as notice to you as Paullus's attorney that we desire to exercise the option, regardless of the proper exercised date. . . ."

At the termination of the escrow agency with Gibson and Palmer, Fowler elected not to approve Robert Campbell, Jr., as the escrow agent as provided in Paullus' "assign-

ment," and, on November 21, 1958, nominated the Quincy Branch of the National Bank of Commerce of Seattle (originally so designated by Paullus) which then accepted the responsibility of escrow agent. The escrow documents were deposited with the bank, together with supplemental escrow instructions relating to payments of $200 a month, commencing October 1, 1958, which Fowler would make upon the contract of purchase referred to in the option agreement. The monthly payments were to be retained by the escrow agent until a contract to purchase was executed by Paullus, in accordance with the option agreement.

Fowler thereafter prepared an executory contract of purchase and forwarded it to Paullus' attorney at Walla Walla for approval and signature. November 18, 1959, Fowler, in answer to a telephoned request from Paullus for a premature payment on the contract of purchase, wrote to him as follows:

". . . I have been looking into the matter, only to find that I can't get much consideration in connection with the loan until such time as the real estate contract is in escrow with the bank. . . .

"I understand that since receiving the letter from your attorney in Walla Walla the contract and instructions have been sent to him for your signature. If you will sign them and return them to the bank, I see no reason why we can't clear up this deal soon.

"Please let me know your intentions."

This letter was never answered; nor was the contract, which was drawn in conformity with the terms of the option agreement as understood by Fowler, signed by Paullus or returned to the bank.

From October 1, 1958, to January 1, 1960, Fowler continued to deposit with the escrow agent the monthly payments of $200 to be applied on the contract of purchase when executed. January 1, 1960, Fowler increased his payments to $300 a month, which sum included $100 a month for the personal property.

January 7, 1960, Ward Paullus commenced an action against J. B. Fowler and wife to obtain possession of the land and personal property, alleging that the term of the

lease had expired December 31, 1959; that the Fowlers had no legal right to remain in possession of the real and personal property because of the expiration of the lease, and, further, that Fowlers had sold some or all of the personal property, in violation of the terms of the lease agreement.

Fowlers' answer admitted that the lease had expired, but denied that they were in default or had in any manner breached the contract and, by way of affirmative defense, alleged that they had given timely notice of their election to exercise the option to purchase; that they had subsequently made monthly payments to the escrow agent for the benefit of the plaintiff, as provided by the option to purchase; that the plaintiff had failed and refused to execute a contract of purchase as required by the option agreement, and requested that plaintiff specifically perform his obligation under the option agreement and be required to execute an installment contract for the sale and purchase of the real and personal property.

By way of cross-complaint, the Fowlers alleged that Paullus had failed to make application for water to the Bureau of Reclamation in the spring of 1959; that in May, 1959, Fowlers were able to obtain water through their own efforts, and that, by that time, their crops were damaged in the sum of approximately $9,000 due to the delay in receiving irrigation water. Fowlers requested judgment upon their cross-complaint in the amount of the damage, plus $76.25 for attorneys' fees expended by them in procuring delivery of the water.

Paullus did not answer the affirmative defense or cross-complaint, but did enter into a stipulation that the issues raised by the cross-complaint would be deemed denied, and stipulated to various other items which are not material to the issues which will be hereinafter discussed.

The cause was tried to the court. At the trial, the evidence established the facts substantially as above set forth and, in addition, that the duplicate copy of the option agreement, which Martin assigned to the Fowlers, had not been changed to comply with the actual terms upon which the

minds of the parties had met. The unchanged document contained this provision: " . . . said option *may* be exercised at the time the $9000.00 rental is paid to Ward Paullas [*sic*], *or within not to exceed sixty (60) days thereafter.*" (Italics ours.) The Fowlers had relied upon the authenticity of this copy of the option agreement.

The court entered findings of fact that, September 3, 1958, the defendants had notified plaintiff's attorney of their intention to exercise the option "regardless of the proper exercised date"; that plaintiff did nothing in response; that again in November, 1959, defendants requested plaintiff to execute a contract in accordance with the option; that plaintiff did nothing in response thereto; that "Defendants did all they could to exercise the said option"; that the defendants had paid the sum of $200 a month from October 1, 1958, through December, 1959, and, commencing January 1, 1960, had paid $300 a month upon the purchase price of the property, in accordance with their understanding of the conditional sale terms; that plaintiff knew of the existence of the unchanged copy of the option agreement, and that he was bound by its unchanged terms.

The court further found that the defendants had not established their claim of damages on the cross-complaint, but did allow judgment in the sum of $76.25 expended for attorneys' fees in obtaining the water.

The court dismissed the plaintiff's cause of action with prejudice, and ordered Paullus to execute a contract of sale in accordance with the terms and conditions of the option agreement.

From the judgment directing specific performance of the contract and payment of $76.25 attorneys' fees, the plaintiff has appealed. The defendants have cross-appealed from that portion of the judgment denying their claim for damages.

We will first consider the assignments of error on the direct appeal. Appellant asserts that the assignments of error pose the following questions:

"(a) Which option agreement, the original changed op-

tion agreement, or the undated, signed copy of the option agreement should be enforced?

"(b) When was the option to be exercised? Was it to be exercised at the time the $9,000 was paid (which it is admitted was on or about September, 1958), or was it to be exercised in December of 1959?

"(c) Was an unconditional tender of performance made by Mr. Fowler on either one of these options to purchase sufficient to entitle him to specific performance?

"(d) Is the contract ambiguous as to whether or not the payments of $200.00 per month as mentioned in the option contract are to include interest, or are they $200.00 per month plus interest?"

Appellant contends that respondents Fowler are bound by the terms of the option agreement as changed by Paullus and Martin. With this contention, we agree. An assignee of a contract stands in the shoes of his assignor. *Stansbery v. Medo-Land Dairy*, 5 Wn. (2d) 328, 105 P. (2d) 86 (1940); *Dahlhjelm Garages v. Mercantile Ins. Co.*, 149 Wash. 184, 270 Pac. 434 (1928). The minds of Paullus and Martin met upon the date when the option agreement was to be exercised. By those terms, Fowlers were duty bound to give notice of their intention to exercise the option when the $9,000 in rental was paid. On September 3, 1958, the Fowlers paid the balance of the $9,000 and gave written notice to Paullus' attorney of their intention to exercise the option. The trial court found that the words in the notice, "regardless of the proper exercised date," constituted an unconditional acceptance of any proper installment payment date, and that respondents did everything required of them to exercise the option. The record amply supports the trial court's finding in this regard.

Were the terms of the option agreement sufficiently definite to entitle the Fowlers to an order of specific performance?

The parties agreed as to the description of the real estate and personal property involved, and that the $30,000 consideration could be paid in cash or by monthly installments. If the "lessees" elected to purchase the property upon monthly installments, the "lessor" agreed to execute

a contract of purchase which would provide for payments to the escrow agent of not less than $200 a month for the real estate and not less than $100 a month for the personal property, with interest at 6% per annum. The instructions to the escrow agent directed it to pay from the installments thus received the title insurance, recording fees, 1% excise tax, attorneys' fees, all costs and expenses or encumbrances, affix and cancel revenue stamps, and remit the balance of the installment payments to Ward Paullus. Finally, the escrow agent was directed to deliver to the purchasers the bill of sale and deed, upon full payment of the purchase price.

All of the elements of a valid contract are here present. Specific performance will lie to compel compliance with the terms of a valid contract. See *Time Oil Co. v. Palmer*, 28 Wn. (2d) 272, 182 P. (2d) 695 (1947); *Ellis v. Wadleigh*, 27 Wn. (2d) 941, 182 P. (2d) 49 (1947); *Roth v. Snider*, 25 Wn. (2d) 514, 171 P. (2d) 819 (1946).

Appellant contends, however, that the date when the installment payments were to commence and whether such payments included interest were uncertainties and ambiguities which prevent the court from ordering specific performance. We do not agree.

As indicated above, the contract required that notice of intention to exercise the option must be given at the time $9,000 in rental was paid. The $9,000, however, paid the cash rental until December 31, 1959. The contract did not state when the installment payments for the purchase of the property were to begin. Respondents performed the payment provisions by making the real-estate payments on October 1, 1958, and the personal property payments immediately after December 31, 1959. The contract was not severable and, construing it most favorably to appellant, both the real and personal property payments would commence October 1, 1958. Respondents' attempted performance, however, was not fatal to their action for specific performance because they offered to comply with appellant's desire in this particular "regardless of the proper exercised date."

The respondents prepared a contract of purchase in accordance with the terms of the option as they construed it. After receiving respondents' proposed contract, the appellant did not execute it or tender a proposed contract which would be acceptable to him. The appellant, after receiving notice that the respondents had exercised their option, was obligated to execute an installment contract, within the purview of the option agreement. *Duprey v. Donahoe,* 52 Wn. (2d) 129, 323 P. (2d) 903 (1958). Had he performed his obligation in this respect, the alleged uncertainties would have been resolved to appellant's satisfaction. The evidence established that respondents had the ability to perform, and would have complied with appellant's interpretation of the terms of the option agreement in this respect, had he expressed it in any manner. Equity requires that to be done which ought to have been done. *Ketner Bros., Inc. v. Nichols,* 52 Wn. (2d) 353, 324 P. (2d) 1093 (1958). The appellant cannot repudiate his contract by his own misconduct. *McAlpine v. Miller,* 51 Wn. (2d) 536, 319 P. (2d) 1093 (1958).

Did the court err in concluding that the installment payments included interest, and in ordering appellant to execute a contract accordingly? We think not.

The phrases in the option agreement with which we are here concerned are as follows: "not less than" $200 a month for the real estate and $100 a month for the personal property, "with interest at 6% per annum on deferred balances."

The words "not less than" are words of limitation fixing the amount of the minimum monthly payment that would satisfy the seller. They are also words that grant to the purchaser the right to make larger monthly payments, if he elects to do so. One who buys property on installments is vitally concerned with his ability to meet the seller's minimum monthly payment requirements.

Webster's New International Dictionary (2d ed.) defines the word "with" as meaning either "inclusive of" or "by way of addition or supplement." It has a dual meaning.

A seller dictates the terms upon which he will sell his property. If, in so doing, he uses a term which has a dual meaning, he cannot complain if the court requires him to accept the interpretation most favorable to the purchaser. *Wise v. Farden,* 53 Wn. (2d) 162, 332 P. (2d) 454 (1958); *Wenatchee Production Credit Ass'n v. Pacific Fruit & Produce Co.,* 199 Wash. 651, 92 P. (2d) 883 (1939); *Irwin v. Pacific Fruit & Produce Co.,* 188 Wash. 572, 63 P. (2d) 382 (1936).

The trial court did not err in its order that the $300 monthly payments would include interest.

We turn now to respondents' cross-appeal. The copy of the water application which was admitted in evidence establishes that the Bureau of Reclamation regulations require that "If the farm unit is being purchased under contract, only the purchaser should sign." The Fowlers exercised their option on September 3, 1958. Their status was thereby changed from that of tenants to that of purchasers. In the spring of 1959, Paullus' status as seller did not authorize him to make an application for water.

The court did not err in its conclusion that the Fowlers had not established their right to damages against Paullus. The trial court did erroneously grant judgment against Paullus in the amount of $76.25 for expenses incurred in making the application for water.

For the reasons stated, the cause is remanded with instructions to modify the judgment by deleting therefrom the item of $76.25. The judgment is further modified by directing Paullus, in accordance with the views herein expressed, to execute a contract of sale for the real estate and personal property in the principal sum of $30,000. Installment payments in the amount of $300 a month, commencing as of October 1, 1958, shall be made to the escrow agent, the National Bank of Commerce of Seattle, Quincy Branch. The monthly payments of $300 shall include interest at the rate of 6% per annum on the deferred balance, which shall be computed from September 3, 1958, the date the option was exercised. The escrow agent shall disburse the payments thus received in accordance with its instructions re-

ferred to above. In all other respects, the judgment is affirmed. Respondents will recover their costs.

FINLEY, C. J., DONWORTH, WEAVER, and ROSELLINI, JJ., concur.