[No. 36688. En Banc. April 29, 1965.]

BENNETT FEIGENBAUM, *Appellant*, v. WILLIAM BRINK *et al.*, *Respondents.**

*Reported in 401 P.2d 642.

126

Schweppe, Reiter, Doolittle & Krug, by Thomas R. Beierle, for appellant.

Wallace & Fraser, for respondents.

OTT, J.—November 1, 1960, Bennett Feigenbaum and Roberta, his wife, leased a beach house on Bainbridge Island from William Brink and Barbara, his wife. The sole means of access to the leased premises was a walkway leading from the public road, cut into the hillside above, downhill past the Brink residence to the beach house. The portion of the walkway with which we are here concerned was constructed of roughhewn wooden planks, with a strip of abrasive paint down the center line. The planks were laid crosswise, sloping downward at about a 15 degree angle, interspersed with some irregularly spaced steps, and continued to a point a few paces below the Brink residence. There is a substantial wooden handrail along the walkway for most of its length.

The walkway was used in common by the parties—by the lessees as the only land access to the beach house and to a common woodpile, and by the lessors as access to their residence, the common woodpile, and their boathouse and tool shed on the waterfront.

Early in December, 1960, due to heavy rainfall, the abrasive paint on the roughhewn wooden planks was wearing off. There were several discussions about the condition because both Mr. Feigenbaum and Mr. Brink had slipped and lost balance on the planks, but had not fallen. In late December, 1960, Mr. Brink, with Mr. Feigenbaum's assistance, nailed down strips of combination roofing on most of the planks, but the work was not completed.

January 29, 1961, at about 6 p. m, the Feigenbaums returned to their home from a Sunday afternoon drive. It

had been raining and the walkway was slippery. Mrs. Feigenbaum went down the walkway to their residence, turning on a floodlight en route. Mr. Feigenbaum stopped at the common woodpile above the Brinks' residence, placed three large pieces of fireplace wood across both forearms, and proceeded down the walkway without using the handrail. When he reached the planked portion that had not been covered with roofing material, he slipped, fell, and suffered a broken leg.

Mr. Feigenbaum commenced this action against the Brinks to recover for his injury. The trial court, sitting without a jury, found (1) that the defendants Brink were not negligent, (2) that Mr. Feigenbaum had assumed the risk of injury, (3) that a lease provision expressly barred any recovery, and (4), in a special finding, that plaintiff had suffered special damages of $967 and general damages of $3,000.

From the judgment of dismissal, Mr. Feigenbaum appeals.

Appellant contends that the trial court erred in failing to find primary negligence on the part of the respondents. With this contention, a majority of the court agree.

The respondents had knowledge of the slippery condition of the walkway, had a duty to keep it in a safe condition (*Schedler v. Wagner*, 37 Wn.2d 612, 225 P.2d 213, 230 P.2d 600, 26 A.L.R.2d 604 (1950)), and failed to exercise reasonable care to repair it. When but one inference can be drawn from the facts, negligence is established as a matter of law. *Berndt v. Pacific Transport Co.*, 38 Wn.2d 760, 766, 231 P.2d 643 (1951); *Carroll v. Union Pac. R.R.*, 20 Wn.2d 191, 199, 146 P.2d 813 (1944).

Appellant next contends that the trial court erred in holding that the nonliability clause in the written lease extended to the walkway. The lease described the premises as the "Brink waterside waterfront home," and granted to the lessees the right to use the walkway. The nonliability clause provided:

Lessor . . . shall not be held liable for any damage to property or personal injuries caused by any defects

which may now exist or hereafter occur on or in front of said premises.

The appellant had no dominion over the common walkway leading to the leased premises and no duty to keep it in repair. The walkway in question led from the road to the rear of the "Brink waterside waterfront home" and was not "on or in front of" the leased premises.

In the absence of unequivocal language, nonliability provisions of a contract will not be extended to include areas not specifically described. *Glant v. Lloyd's Register of Shipping*, 141 Wash. 253, 262, 251 Pac. 274, 252 Pac. 943 (1926). The trial court erred in holding that the nonliability clause extended to the common walkway, which was under the sole dominion and control of the respondents, and to which appellant had been granted only a use right.

The trial court found that appellant had voluntarily assumed the risk of injury, when, with full knowledge of its hazardous and slippery condition, he loaded both his arms with fireplace wood and proceeded down the walkway. His wife had preceded him across the same area without incident. The court held that appellant's conduct in loading his arms so that he could not use the handrail in his descent was an assumption of risk, rather than conduct which established contributory negligence. In its oral decision, the court said:

> The defense is that plaintiff was contributorily negligent and also that he voluntarily exposed himself to an unreasonable risk, which is the maxim, volenti non fit injuria. I have difficulty separating the negligence from the defenses of contributory negligence and volenti.

The court then quoted from *Walsh v. West Coast Coal Mines*, 31 Wn.2d 396, 411, 197 P.2d 233 (1948), as follows, and continued:

> " 'It may be said that the voluntary conduct of the plaintiff in exposing himself to a known and appreciated risk is the interposition of an act which, as between the parties, makes the defendant's act, in its aspect as negligent, no longer the proximate cause of the injury; or at least is such participation in defendant's conduct as to

preclude the plaintiff from recovering on the ground of the defendant's negligence.' "

In the present case, it seems to me that this rule would apply because the risk of injury was well known and appreciated by Mr. Feigenbaum, as it was by Mr. Brink. *And whether we say that Mr. Brink was not negligent or that Mr. Feigenbaum was contributorily negligent or that Mr. Brink's negligence was not the proximate cause of the injury, we come out the same end of the horn.* (Italics ours.)

It appears from the record that the trial judge had "difficulty separating the negligence from the defenses of contributory negligence and volenti," not as to the findings of fact, but as to the nomenclature of the law applicable to these defenses.

We have held that the doctrine of assumption of risk is more applicable to those cases where the relationship of master and servant existed than to landlord and tenant relationships. See *Caron v. Grays Harbor Cy.*, 18 Wn.2d 397, 411, 139 P.2d 626, 148 A.L.R. 626 (1943). Whether denominated assumption of risk or contributory negligence, each refers to the same conduct, in cases where knowledge by the injured party of an obvious danger is involved.

In *Siragusa v. Swedish Hospital*, 60 Wn.2d 310, 373 P.2d 767 (1962), we extensively reviewed the law of master and servant relative to the doctrine of assumption of risk and held that contributory negligence includes the doctrine of assumption of risk, where the risk is created by the negligence of the employer. In this regard, we said, p. 319:

Knowledge and appreciation of the risk of injury, on the part of the employee, are properly important factors which should be given weight in the determination of the issues of whether the employer is *negligent* in maintaining the dangerous condition and whether the employee is *contributorily negligent* in exposing himself to it.

Subsequent to the *Siragusa* case, we abolished the doctrine of assumption of risk in a relationship other than that of master and servant. *Engen v. Arnold,* 61 Wn.2d 641, 379

P.2d 990 (1963). Other jurisdictions treat the doctrine of assumption of risk as being included within the general concept of contributory negligence, and recognize that, for all practical purposes, the proper analysis is in terms of contributory negligence. *Ford Motor Co. v. Arguello*, 382 P.2d 886 (Wyo. 1963); *McGrath v. American Cyanamid Co.*, 41 N.J. 272, 196 A.2d 238 (1963); *Rocky Mountain Trucking Co. v. Taylor*, 79 Wyo. 461, 335 P.2d 448 (1959); *Howe v. Gambuzza*, 15 N.J. Super. 368, 83 A.2d 466 (1951); *White v. Ellison Realty Corp.*, 5 N.J. 228, 74 A.2d 401, 19 A.L.R.2d 264 (1950); *Porter v. Cornett*, 306 Ky. 25, 206 S. W.2d 83 (1947). See 2 Harper & James, Torts § 21.8, p. 1191; 39 Wash. L. Rev. 345, 358.

■ The underlying reason for the application of the doctrine of assumption of risk to landlord and tenant cases is that a tenant (with certain exceptions not here present) takes the property as he finds it. In the absence of an express agreement, there is no duty on the part of the landlord to repair. *Hughes v. Chehalis School Dist. No. 302*, 61 Wn.2d 222, 377 P.2d 642 (1963); *Conradi v. Arnold*, 34 Wn.2d 730, 743 *et seq.*, 209 P.2d 491 (1949). The tenant assumes the risk of apparent deficiencies in the leased premises.

In the instant case, the common walkway, although it was the only means of ingress and egress to the residence, was not a part of the premises demised to the appellant. The respondents had a duty to repair and keep it in a reasonably safe condition. To permit the application of assumption of risk to the facts in this case is tantamount to dividing the factual elements which, together, constitute the defense of contributory negligence. We therefore adopt the reasoning of the *Siragusa* and *Engen* cases, and hold that the doctrine of assumption of risk is not here applicable.

■ We find no merit in appellant's contention that a tenant has no alternative other than to forfeit his tenancy or be guilty of contributory negligence by his continued use of a walkway, with knowledge of its condition. Where a tenant's sole access to the leased premises is a common

walkway in known disrepair, specific performance will lie to enforce the landlord's duty to repair. *McDonough v. Southern Oregon Mining Co.*, 177 Ore. 136, 159 P.2d 829, 161 P.2d 786, 164 A.L.R. 788 (1945); *Jones v. Parker*, 163 Mass. 564, 40 N.E. 1044 (1895). See *Paullus v. Fowler*, 59 Wn.2d 204, 367 P.2d 130 (1961).

Further, whether appellant used the walkway in its known condition in a reasonably prudent manner is a factual determination for the trier of the facts.

The judgment is reversed, and the cause remanded with instructions to enter such findings relative to contributory negligence as may be deemed meet and proper under the facts of this case. In the event the court finds that the appellant's conduct did contribute to his injury and was a proximate cause of his damages, judgment of dismissal is to be entered accordingly. If no contributory negligence is found, judgment for damages in the amounts the court previously determined is to be entered. Costs will abide the final determination of the action.

DONWORTH and HAMILTON, JJ., and SOULE, J. Pro Tem., concur.

HILL, J. (concurring in the result)—I concur in the result of the majority opinion. I am not at all sure that volenti non fit injuria is not applicable. The alternatives to the use of the existing walkway facetiously suggested by the dissent, of coming in by air or by sea, are concededly fanciful. The real alternatives lay in how the known slippery walkway was to be used. The plaintiff clearly had the reasonable alternative of loading, or not loading, both arms with firewood before beginning his perilous descent.

In any event, I agree with the majority that the trier of the facts should determine whether one about to traverse a walkway known to be slippery is acting in a reasonably prudent and cautious manner when he loads both arms with firewood, thus making it impossible to utilize an available handrail along the walkway.

ROSELLINI, C. J. (dissenting in part)—In my opinion the judgment of the trial court should be reversed, and that

court should be directed to enter judgment in favor of the plaintiff. As the majority opinion states, the evidence showed that the walkway had become defective after the beginning of the plaintiff's tenancy; the defendants had notice of the defective condition and were aware of the danger which it presented but had failed to correct the condition although the means to do so were inexpensive and readily available; and there was no other means of access to the demised premises.

I do not agree with the statement of the majority that the plaintiff's right to bring an action for specific performance afforded him a reasonable alternative to using the walkway. The authorities cited in the paragraph containing this conclusion do not support it, nor are they in any way concerned with the question. The first two cases cited merely hold that specific performance will lie to enforce the covenants of a valid lease, and the third case holds that specific performance will lie to enforce the provisions of a valid contract. These cases do not even support the proposition that specific performance will lie to compel a landlord to repair a common walkway where, in a case such as this, his duty to repair is imposed by law and not by the provisions of the lease.

In the case of *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193, we quoted with approval the following from Restatement, Torts § 893, p. 491:

> A person who knows that another has created a danger or is doing a dangerous act or that the land or chattels of another are dangerous, and who nevertheless chooses to enter upon or to remain within or permit his things to remain within the area of risk is not entitled to recover for harm unintentionally caused to him or his things by the other's conduct or by the condition of the premises, *except where the other's conduct constitutes a breach of duty to him or to a third person and has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right or avert a harm.* (Italics mine.)

In commenting upon the italicized portion, the authors of the Restatement said:

one who has a right that a landowner shall not only notify him of dangerous defects in the land but also shall maintain the premises in a safe condition for his use, may be entitled to recover from the landowner for harm caused by a defective condition even though he is aware of it . . . since otherwise he might be prevented from exercising his right of using the premises.

Nowhere in the Restatement or in any other authority which has come to my attention is there any suggestion that the availability of a legal remedy to enforce the plaintiff's rights (and such a remedy is always available in one form or another if he has such rights) constitutes a reasonable alternative to the use of the premises. It should be obvious that this is not the kind of alternative which will excuse the landowner from performing his duty to maintain the premises in a safe condition. The plaintiff's lease might well expire while he awaited a final decision in his legal action.

When it is said that a lessee cannot recover for injuries sustained in using a defective means of access to his leased premises if he has a reasonable alternative, what is meant is that he cannot recover if there is another means of access which a reasonable lessee would use. In the case before us, the only other means of access was by water or air; and the majority in fact concede that no other reasonable means of access was at hand.

I agree with the majority's conclusion that the doctrine of assumption of risk does not apply to the factual situation before us, but I disagree that it is necessary to remand the case for a finding on the question of contributory negligence. The trial court, in its memorandum opinion, indicated quite clearly that it had reached a decision about the reasonableness of the plaintiff's conduct. On that question, the trial court said:

I don't want to find him contributorily negligent because somehow I don't believe he was, but I do think he voluntarily exposed himself to the risk.

The question of contributory negligence was before the court and was given full consideration. The memorandum

opinion reveals that the court found there was no contributory negligence, and the absence of any finding that there was such negligence is consistent with the statement contained in the memorandum. On remand of this case, the court can not make a finding that the plaintiff was guilty of contributory negligence unless it has changed its mind about the evidence since it rendered its judgment in the case. Thus, the trier of the facts will be invited to review its own decision and render a new decision, with no additional facts before it. This is not a proper function for the trial court to perform.

It is evident from a reading of the memorandum opinion that the court believed that the plaintiff behaved in a reasonably careful and prudent manner, but the court admittedly was confused about the law pertaining to the plaintiff's right to use the walkway, knowing that it was in a defective and dangerous condition. It is my opinion that the rule is clear: he had such a right if there was no other means of access which reasonably could be used. The evidence is equally clear that no such alternative means of access was available.

This court should dispose of the appeal by granting the relief prayed for by the plaintiff.

FINLEY, HUNTER, and HALE, JJ., concur with ROSELLINI, C. J.

---

July 13, 1965. Petition for rehearing denied.