[No. 34234. Department Two. January 9, 1958.]

RENA McALPINE, *Respondent*, v. VERNON MILLER *et al.,*
*Appellants.*[1]

*Pemberton & Orloff*, for appellants.

DONWORTH, J.—This action involves a controversy be-
tween a lessor and a lessee concerning their respective
rights and obligations relative to a certain beer and wine
license issued to the lessee by the Washington state liquor
control board (herein called the liquor board). Appellant
Irene Miller (the lessee) will be referred to as though she
were the sole appellant.

Respondent (the lessor), having previously demanded a
transfer of the beer and wine license, instituted this action
thirteen days prior to the expiration of the term of the
lease. In the prayer of her complaint, she asked (1) for a
temporary injunction enjoining appellant (the lessee) from
making any application to the liquor board for a transfer
of the license from the leased premises to another location,
(2) that, upon a trial of the cause, such injunction be made
permanent, and (3) that appellant be required to make
application to the liquor board for a transfer of the license

[1]Reported in 319 P. (2d) 1093.

to respondent or her assigns. She further prayed that, in the event of appellant's refusal to do so, the court appoint a commissioner to execute such application on her behalf.

Upon the filing of the complaint, the trial court issued *ex parte* a temporary restraining order and order to show cause why the restraining order should not be continued in effect during the pendency of the action. The *ex parte* order enjoined appellant from taking any action toward effecting a transfer of the license.

On the return day, a hearing was held, which resulted in the entry of an order continuing the restraining order in effect *pendente lite*, from which no appeal was taken within fifteen days, as required by Rule on Appeal 14(3), 34A Wn. (2d) 20.

Appellant's answer put in issue the material allegations of the complaint, and affirmatively alleged that respondent refused to renegotiate a *five-year* lease in accordance with the provisions of the existing lease, and that appellant had vacated the premises at the end of the term and had delivered the beer and wine license to the liquor board. Appellant also cross-complained for five thousand dollars damages because of respondent's refusal to renegotiate a *five-year* renewal and appellant's resultant loss of her tavern business.

The case came on for trial on the merits some two months after the term of the lease had expired. Appellant had vacated the leased premises at the end of the term. The principal issue was the correct interpretation of the lease provisions regarding the rights and obligations of the parties with respect to the beer and wine license. The judgment of the trial court (based on findings of fact and conclusions of law) directed appellant to execute an application to the liquor board for the transfer of the license to respondent or her assigns, and appointed a certain commissioner, named therein, to execute such application on her behalf if she failed to do so within fourteen days. Appellant was also permanently enjoined from transferring the existing license from the leased premises to another location, and her cross-complaint for damages was dismissed.

Appellant has appealed from the judgment. Respondent paid her appearance fee in this court, but filed no brief, and no oral argument was presented on her behalf.

Before discussing appellant's assignments of error, we wish to briefly refer to the lease and other documents out of which the rights and obligations of the parties regarding the beer and wine license arise.

The original lease was executed in 1946 by respondent, as lessor, and one Irwin, as lessee. The term was five years and two months from August 1, 1946, to October 1, 1951. The leased premises consisted of the ground floor and basement of a certain building in the town of Ferndale, which, since 1933, had been used for the operation of a tavern, card room, pool hall, and small restaurant. The rental was one hundred seventy-five dollars per month,

". . . It being agreed that no rent is due under this lease until a Washington State beer and wine license is issued to the lessee."

The following paragraphs of the lease are pertinent to this controversy:

"9. It is further agreed that none of the licenses for the business conducted in said premises shall be removed from said premises during the term of this lease. That further the lessee agrees that if he does not renegotiate a new lease with the lessor that he shall within 15 days of the expiration period of this lease apply for a transfer of the beer and wine licenses under which he is operating by virtue of this lease to this lessor herein. . . .

"17. It is hereby further agreed by and between the lessor and lessee that the lessee shall have an option to renegotiate a lease for a period of five years. The rental to be charged in said new lease to be agreed upon as of the date of the expiration of this lease."

Prior to the expiration of the lease, the original parties, on July 20, 1949, executed a "lease extension agreement," which, after referring to the original lease, contained the following recital:

"And Whereas, said lease provides for an option to renogiate [sic] said lease for an additional period of five (5) years from the expiration date thereof, said date being Octo-

ber 1, 1951, and Whereas, the lessee is now intending to make substantial repairs to said premises, and desires to exercise his right to a renewal of said lease for an additional period of five years; . . ."

This document (which, as well as the original lease, was drawn by the lessor's attorney) contained an agreement that the term of the lease was thereby extended from October 1, 1951, to October 1, 1956,

". . . upon the same terms and conditions as therein [original lease] set forth, which terms and conditions are hereby incorporated herein as fully as if set forth herein."

Thus, all of the provisions of the old lease, including paragraphs 9 and 17, above quoted, were incorporated in the new lease. Irwin assigned his lessee's interest to one Taylor in April, 1950.

On August 11, 1950, appellant and her then husband acquired the lessee's interest by assignment from Taylor. Subsequently, appellant was awarded this interest by a divorce decree. Her present husband has no legal interest in the lease. Hence, appellant is referred to herein as though she were the sole lessee and appellant.

During the summer of 1956, there was correspondence between counsel for the respective parties concerning negotiations for a new lease commencing October 1, 1956. Appellant desired a five-year term, but respondent did not want to again lease for that period and would consider only a two-year term. At a meeting of the parties with their counsel, held in the latter part of August, respondent would not discuss a five-year lease but was interested in only a two-year lease at an increase of one hundred dollars per month rental, with a ninety-day cancellation clause in the event of a sale. No agreement was reached, but, when the meeting broke up, appellant and her husband understood, from what respondent said, that she would hear from respondent further about the matter. The next thing that appellant heard from respondent was the service of a summons, complaint, and temporary restraining order.

As we interpret the provisions of the original lease (particularly paragraphs 9 and 17) and the lease extension

agreement, the parties intended that the lessee should have an option, at the end of the term, to have a five-year renewal of the lease on precisely the same terms and conditions as stated therein, except that the amount of rental was to be subject to renegotiation. The only reason that appellant failed to renegotiate a new five-year lease was because respondent refused to discuss the subject but insisted in talking about a two-year lease which would be subject to cancellation on ninety-days' notice in the event of a sale.

Respondent, having breached the lease by refusing to comply with her obligations under paragraph 17, is in no position to invoke the aid of a court of equity to compel appellant to apply for a transfer of the beer and wine license to respondent in accordance with the provisions of paragraph 9.

The importance to appellant of having a license from the liquor board should not be underestimated. There is only one other such license in the town of Ferndale. The evidence shows that appellant, prior to the expiration of the lease, was netting about four hundred dollars a month. Respondent testified (over objection that it was hearsay) that it is impossible to obtain another license from the liquor board for a tavern in Ferndale. Appellant surrendered her license to the liquor board when she vacated the premises. Respondent applied to the liquor board for a new license, but her application was denied because the existing license issued to appellant was outstanding.

If appellant were compelled to transfer her license to respondent (assuming that the board would approve the transfer), appellant could not operate a tavern in Ferndale unless the liquor board changed its policy, and, if appellant should be thus prevented from engaging in the tavern business in Ferndale, she would be deprived of a source of substantial income.

Respondent, in this case, sought, and was granted, specific performance by appellant of one provision of the lease contract while, at the same time, she was refusing to perform another covenant of the contract which she had obligated herself to perform.

■ The equitable maxims that he who seeks equity must do equity, and he who comes into equity must come with clean hands, apply to this case.

Here, respondent refused to negotiate regarding the rental for a *five-year renewal* of the lease as she had agreed to do. Having thus prevented appellant from exercising her right to negotiate and, presumably, to obtain a five-year extension of the lease of the tavern premises at a reasonable rent, she now asks a court of equity to aid her in compelling appellant to transfer to her the wine and beer license which respondent's own breach of the contract had rendered useless to appellant.

As was aptly said by this court, in *Cascade Tbr. Co. v. Northern Pac. R. Co.,* 28 Wn. (2d) 684, 184 P. (2d) 90 (1947):

"Appellant is seeking specific performance of a contract which is a proceeding in equity. However, appellant has refused to accept a deed containing the terms of the contract, namely, the provisions of paragraph 10. Appellant admits that it has not complied with the provisions of paragraph 10, yet it is seeking specific performance in order that it can avoid its obligation to perform those provisions.
"The principle of law is stated in 49 Am. Jur. 10, § 6:
" 'The remedy of specific performance is an equitable remedy governed by equitable principles; equity will not decree specific performance of an inequitable contract or an unconscionable bargain, but will leave the party to his remedy at law. It will not grant such relief when it would be contrary to equity and justice to do so. One coming to a court of equity for specific performance must show that there is equity and good conscience in support of his claim to relief. He must come into court with clean hands, and, seeking an equitable remedy, he must himself do equity.' "

The judgment must be reversed with directions to dismiss respondent's action.

There remains for consideration appellant's cross-complaint in which she sought five thousand dollars damages for loss of the beer and wine license. Since, under our disposition of the case, respondent's action for specific performance is dismissed, we think that the trial court's dismissal

of the cross-complaint was correct, and we need not give further consideration to this assignment of error.

Appellant will recover her costs in this court.

It is so ordered.

HILL, C. J., ROSELLINI, FOSTER, and HUNTER, JJ., concur.