[No. 38720.   Department Two.   March 31, 1967.]

PAUL KREGER et al., *Respondents*, v. ALMA E. HALL et al., *Appellants.**

*Cummings & Harris*, by *Theodore P. Cummings*, for appellants.

*Lycette, Diamond & Sylvester*, by *Lyle L. Iversen*, for respondents.

OTT, J.—December 7, 1964, Kreger Brothers, Inc., a corporation, (hereinafter referred to as Kreger Brothers) en-

*Reported in 425 P.2d 638.

tered into an earnest money receipt and agreement with Alma E. Hall and Gilbert Carraher (hereinafter referred to as sellers) for the purchase of approximately 15 acres of land in King County containing a gravel pit, for the sum of $40,000. The earnest money agreement acknowledged receipt of the payment of $1,000 and provided that upon the sellers' furnishing title clear of encumbrances that $11,500, including the earnest money, be paid in cash on the closing of the sale, February 1, 1965, and that "Encumbrances to be discharged by seller may be paid out of purchase money at date of closing." The balance of the contract was to be paid in annual installments in an amount of $2,500 or more at the option of purchasers, Kreger Brothers. Section 8 of the earnest money agreement provided:

> The sale shall be closed in office of Lande, Eide & McLeod, Attorneys, within 30 days after title insurance policy or report preliminary thereto is delivered showing title insurable, as above provided, or after completion of financing, if financing is called for herein, whichever is later, but in any event not later than February 1, 1965, which shall be the termination date. The purchaser and seller will, on demand of either, deposit in escrow with Lande, Eide & McLeod, Attorneys, all instruments and monies necessary to complete the purchase in accordance with this agreement; the cost of escrow shall be paid one-half each by seller and purchaser.

According to the title report, there were two encumbrances on the property at the time of the execution of the earnest money receipt, an unexpired lease, and a mortgage to Security Savings and Loan Association in the sum of $10,000. The lease encumbrance was satisfied of record prior to the closing date of February 1, 1965. The mortgage encumbrance was not satisfied. The sellers on the 28th day of January 1965, wrote the following letter to Kreger Brothers:

> Confirming our telephone conversation of today, this will advise you that the sellers, Carraher and Hall, demand that Kreger Bros., Inc., proceed in accordance with the earnest money agreement and receipt of December 7, 1964, to deposit the balance of the $11,500.00 down pay-

ment for closing of the sale of the gravel pit property located at 9621 So. 216th St., Kent, Wash.

We request that you deposit this money with our office, not later that [sic] February 1, 1965, as provided by the earnest money agreement; otherwise, the sellers have elected to declare all rights of purchasers terminated, as provided by the earnest money agreement.

Kreger Brothers, upon receipt of the letter, advised the office of the sender that they were ready, able and willing to pay the $10,500 down payment, upon the furnishing of title clear of encumbrances and that, if this encumbrance was not previously satisfied, it be paid out of the down payment, or in the alternative the purchasers would assume the mortgage and remit to the sellers any balance remaining over and above the amount of the encumbrance. Kreger Brothers had previously been informed by the sellers that their down payment would not be used to satisfy the mortgage on the property but would be used for other purposes, and that sellers intended to satisfy the encumbrance at a later date from insurance payments.

January 29, 1965, Hall and Carraher entered into an earnest money receipt and agreement for the sale of the property to Parker, Smith, Pauscheck, and Pauscheck, Jr., upon the same terms except that these prospective purchasers did not require that the mortgage encumbrance be satisfied out of the down payment. The agreement provided "This agreement is signed subject to complete clearance of default of agreement between the Kregers and sellers, and will be null and void if Kregers' default of purchase becomes valid."

February 5, 1965, when the down payment had not been made, the sellers wrote the following:

This will advise you that the sellers in the above referenced matter have elected to terminate and cancel the certain earnest money agreement dated December 7th, 1964, by reason of your failure to deposit the sum of $11,500.00 as down payment within the time provided in the earnest money agreement.

Upon receipt of this letter of forfeiture, Kreger Brothers' attorney sent the following letter in reply:

Last week I notified your office by telephone, your secretary taking the call and advising me that you were not in the office at that time, that Kreger was ready to pay off in full the balance due upon the Carraher contract, providing the title report showed the same to be free and clear, in other words, the title report would have to dispense with the lease, which, it is my understanding, is upon the property. I left a call for you and I received no reply, and we have not yet been offered a title report showing free and clear title and have received no response to repeated telephone calls left for you.

Since then, we have received your letter of Feb. 5, 1965, and this is to advise you that upon the clearing of the lease and the presentation of a title report showing the title to be free and clear we are ready to pay off the contract in full, which is a renewal and confirmation of our telephone calls.

Kreger Brothers commenced this action for specific performance of the earnest money agreement. They contended that at all times they were ready, willing and able to pay the balance of the down payment of $10,500; that the sellers failed to deliver a title report showing clear title; that the sellers refused to apply the down payment to satisfy the savings and loan encumbrance as required by the agreement; and that the seller in the alternative refused to permit Kreger Brothers to assume the indebtedness against the premises as a part of the down payment. Kreger Brothers prayed that they be permitted to deposit the $10,500 into court; that the sum be applied to satisfy the encumbrance; that the sellers be required to execute the installment contract as provided in the earnest money agreement; and that the subsequent prospective purchasers' claim, if any, be adjudicated to be junior to the claim of Kreger Brothers. The sellers answered the complaint and alleged that the earnest money agreement was regularly forfeited after due notice; that Kreger Brothers failed to pay any sum other than the earnest money payment prior

to the termination date, February 1, 1965; and prayed that Kreger Brothers take nothing by virtue of the cause of action.

The cause was tried to the court which entered findings of fact and conclusions of law predicated upon evidence substantially as above outlined. The court directed that Kreger Brothers deposit into court the sum of $10,500, that the payment be used to satisfy the encumbrance and that the sellers execute a contract for the balance of the sale price in accordance with the provisions of the earnest money agreement. The court further held that the alleged sale to Smith, Parker and the Pauschecks was junior to the prior rights of Kreger Brothers. From the entry of a judgment predicated on the court's findings of fact and conclusions of law, sellers have appealed.

On appeal, the appellant sellers assert that the trial court erred in ordering specific performance of the earnest money agreement and in failing to find that there had been a forfeiture.

The trial court's pertinent findings of fact are as follows:

By the terms of the earnest money agreement, the title of seller was to be free of encumbrances or defects except easements, restrictions and zoning regulations of record, and a title policy containing no exceptions other than those provided for was to be furnished by the seller and the deal was to be closed in the office of Lande, Eide & McLeod, attorneys, within thirty days after title insurance policy or report preliminary thereto was delivered showing title insurable as provided but in any event, not later than February 1, 1965. Finding of Fact No. 6.

A preliminary commitment for title insurance was obtained by the sellers from Washington Title Insurance Company in the month of December, 1964 but the report showed as exceptions in paragraph 2 a mortgage to secure an indebtedness in the original amount of $10,000.00 against the property in favor of Security Savings & Loan Association, and also in paragraph 3 it showed a lease of the property outstanding to Carl L. Herring and Richard W. Bebout. Finding of Fact No. 7.

At the time the earnest money agreement was entered into, the sellers and their attorney expected that the

mortgage would be removed prior to the closing date from funds that the sellers expected to receive in settlement of an insurance claim for a fire loss. Plaintiffs likewise understood that the mortgage would be removed prior to the closing date. Settlement of the fire loss was not forthcoming prior to the specified closing date and although plaintiffs requested the removal of the encumbrance of the mortgage by the sellers, it was not removed. Finding of Fact No. 9.

Defendant Carraher demanded that plaintiffs pay to the sellers' attorney the $10,500.00 downpayment without any conditions relative to the removal of the mortgage encumbrance and advised plaintiff Paul Kreger that the mortgage would be discharged from the insurance payment. Finding of Fact No. 10.

Plaintiffs declined to pay the $10,500.00 downpayment without an arrangement being made for the removal of the mortgage encumbrance. Finding of Fact No. 11.

After receipt of the letter of January 28, 1965, Mr. Agee made further efforts to reach Mr. Lande by telephone but was advised by the personnel of Mr. Lande's office that Mr. Lande was not available and although Mr. Agee left word that the money was available and plaintiffs desired to close, Mr. Lande did not return his telephone calls or communicate with Mr. Agee in any other way. Finding of Fact No. 15.

After the title report had been received, plaintiffs offered to dispose of the mortgage encumbrance by assuming the mortgage but defendants Hall and Carraher declined to permit this, and they made the same offer to Mr. Lande and were advised that it would not be permitted. Finding of Fact No. 20.

The buyers, at all times, were willing and able to make the downpayment and would have done so except for the fact that the mortgage was outstanding and they had no assurance that the downpayment would be used to discharge the mortgage. Finding of Fact No. 21.

Plaintiffs would have closed the sale of the property in question before February 1, 1965 except for the sellers' failure to furnish clear title and to cooperate in closing. Finding of Fact No. 26.

An action for specific performance of a contract is an equitable proceeding. *McAlpine v. Miller*, 51 Wn.2d 536,

319 P.2d 1093 (1958). When the equitable jurisdiction of the court is invoked by the parties, whatever relief the facts warrant will be granted. *Hubbell v. Ward,* 40 Wn.2d 779, 246 P.2d 468 (1952), and cases cited. An earnest money receipt will support an action for specific performance. *Hubbell v. Ward, supra.* Specific performance will lie to compel compliance with the terms of a valid contract. *Paullus v. Fowler,* 59 Wn.2d 204, 367 P.2d 130 (1961).

The court's findings are determinative of the factual issues involved if there is evidence in the record to sustain them. *Thomsen v. State, ante* p. 92, 422 P.2d 824 (1966); *Simonson v. "U" Dist. Office Bldg. Corp., ante* p. 35, 422 P.2d 1 (1966); *Kueckelhan v. Federal Old Line Ins. Co.,* 69 Wn.2d 392, 418 P.2d 443 (1966); *Ferguson v. McBride,* 69 Wn.2d 35, 416 P.2d 464 (1966); *Wise v. Farden,* 53 Wn.2d 162, 332 P.2d 454 (1958).

A part of the evidence which sustains the trial court's findings is the testimony of Paul Kreger, quoted as follows:

Q. Now, was there ever any arrangement made to guarantee to you that if you paid the down payment that that would be used to discharge the mortgage? A. No. . . . A. He [Gilbert Carraher] said that they would apply this fire insurance toward the mortgage and clean off the mortgage that way. . . . A. I told him we was willing and able to put the $11,000 or the $10,500 up as long as—as soon as they got clear title, and that our attorney in Auburn, Mr. Agee, would handle the transaction. . . . Q. Did Mr. Carraher refuse to clear it out of the down payment? A. Yes, sir. Q. Under what circumstances did Mr. Carraher refuse to pay it out of the remaining $10,500? A. His statement to me is that he wanted the money, he needed the money for something else, that the mortgage would be cleared out of the fire insurance that was due him. Q. All right. Did he state to you that if you put your $10,500 in the office of Mr. Lande that he would not clear the mortgage? A. Yes. Q. He made that statement to you? A. Yes. Q. Can you recall in point of time when this was made? A. Previous to the 28th. Q. Prior to January 28? A. Right. . . . Q. Just so it's absolutely clear, on that conversation you had with Mr. Carraher to the effect that he would not pay off the mortgage, was the conversation to the effect that he

would not pay it off even if you paid the $10,500, or was it to the effect that he would pay it off only out of the $10,500? A. He definitely stated that he would not pay it out of the $10,500, that he needed the money at the time.

With regard to the insurance money which the sellers intended to use to satisfy the encumbrance, Mr. Carraher testified that the fire insurance money was not received to be applied upon the mortgage until after February 1, 1965, and when received it was not in a sufficient amount to satisfy the mortgage.

The record before us in some instances contains conflicting evidence. The trial court resolved the conflict in favor of Kreger Brothers. We are convinced that there is substantial evidence to sustain the trial court's findings of fact.

■ It is a general rule that specific performance will not lie where the party seeking it is in default. *Ferris v. Blumhardt*, 48 Wn.2d 395, 293 P.2d 935 (1956). The trial court found that "Plaintiffs would have closed the sale of the property in question before February 1, 1965 except for the sellers' failure to furnish clear title and to cooperate in closing." (Finding of Fact No. 26.) The trial court found that Kreger Brothers were not in default and were relieved of the actual tender of the money for the reason that (1) the sellers did not furnish a clear title to the property; (2) the sellers asserted that if the down payment was received it would not be used to satisfy the encumbrance as the contract provided; and (3) the sellers refused to permit Kreger Brothers to assume the encumbrance as a part of the down payment. It is the law that one who is ready, able and willing to tender performance of a contract is relieved of his duty to tender when the other contracting party has by word or act indicated that he will not perform his duties under the contract. *McCormick v. Tappendorf*, 51 Wash. 312, 99 Pac. 2 (1909).

In this case, the trial court found:

Defendant Carraher [sellers] demanded that plaintiffs [Kreger Brothers] pay to the sellers' attorney the $10,500.00 downpayment without any conditions relative to the removal of the mortgage encumbrance and advised

plaintiff Paul Kreger that the mortgage would be discharged from the insurance payment. Finding of Fact No. 10.

Applying the rules announced above to the court's factual determination, we hold that the trial court did not err in ordering specific performance of the contract.

Judgment is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and DENNEY, J. Pro Tem., concur.