[No. 44310. En Banc. December 1, 1977.]

STANLEY C. RONKEN, ET AL, *Respondents,* v. THE BOARD OF COUNTY COMMISSIONERS OF SNOHOMISH COUNTY, ET AL, *Appellants.*

*Robert E. Schillberg, Prosecuting Attorney,* and *Richard S. Lowry* and *David T. Patterson, Deputies,* for appellants.

*Ferguson & Burdell* and *William B. Moore,* for respondents.

*Robert E. Beaty* on behalf of Washington State Association of Counties, amicus curiae.

HICKS, J.—Plaintiffs, union members, a union local, a contractor, and a contractors' association (respondents), sought declaratory and equitable relief against appellants, the Board of County Commissioners of Snohomish County (commissioners). The commissioners made it a practice to have road work and other public work projects done by county employees, rather than letting the work out to the private sector through competitive bidding procedures. This practice was enjoined by the Snohomish County Superior Court as violative of the statutory scheme under RCW 36.32.240, .250, and 36.77.060. From a detailed order of the trial court, the commissioners appeal to this court. Respondents cross–appeal from the trial court's definition of "day labor". We affirm the trial court on all issues.

The commissioners had been using county road crews (day labor) for construction work, other than ordinary maintenance, on projects having a true cost in excess of $25,000, without calling for competitive bids. This they did by dividing into units and classes of work, what was in reality a single project, and then listing these units or classes of work in authorizing resolutions as separate projects each costing $25,000 or less. A project extending into another calendar year was frequently treated as two projects, one in each year. In addition, structures and other

public works, which clearly did not constitute road work, were constructed by county employees without requesting competitive bids, though such public works had a true cost in excess of $1,000[1] each.

Where work having a cost in excess of $2,500 was performed without competitive bids, the commissioners failed to maintain records of the estimated and final costs of such projects. Nor was public notice of such projects provided as required by RCW 36.77.070 or RCW 39.04.

The above facts come from a stipulated record that is quite sketchy. This state of the record is troublesome to the Washington State Association of Counties which has favored us with a brief as amicus curiae. It is the concern of amicus "that counties as a whole are left with workable administrative standards in the aftermath of the Snohomish County Road District scandal." The counties' main concern is that the more onerous and expensive notice requirements of RCW 39.04, imposed by the trial court on Snohomish County for day labor road projects costing over $2,500, not be imposed on all counties. Amicus urges that Snohomish County alone be subjected to the requirements of the trial court's order, and other counties be held only to those less detailed and less costly notice requirements in RCW 36.77.070.

Commissioners' arguments are as follows:

1. Respondents should not have been permitted to bring this action (a) because they did not have any more direct or extensive interest in the subject matter of the action than any other taxpayer, therefore they were required to serve notice on the attorney general or county prosecutor prior to this suit, which they did not do; (b) they were not entitled to declaratory relief, as necessary elements for declaratory jurisdiction were absent, and they had an alternative remedy at law in the form of a direct appeal from

---

[1]Amended to $3,500 in the last legislative session by Laws of 1977, 1st Ex. Sess., ch. 267, p. 933 (RCW 36.32.250).

the decision of the commissioners, RCW 36.32.330; and (c) the necessary elements for injunctive relief were absent.

2. In conducting county affairs in the manner most conducive to the welfare of the citizens, the commissioners must use their best judgment in deciding whether public works generally and road projects costing less than $25,000 could be more economically accomplished by using hourly-paid county employees and county-owned equipment, than by letting the work to private contractors. Statutes regulating the manner of accomplishing public works should be construed to effect such a policy.

3. Projects accomplished in conformity with the standards of good practice promulgated by the County Road Administration Board[2] in WAC 136-18 are lawfully constructed, and the stricter guidelines imposed on Snohomish County by the trial court should be overturned.

4. Publication requirements imposed by the trial court on Snohomish County day labor road construction projects costing in excess of $2,500 are stricter and more extensive than demanded by RCW 36.77.070. Those simpler, less onerous, less expensive requirements should be permitted, not the more detailed ones in RCW 39.04 applied by the court.

Respondents contend in their cross-appeal that the trial court erred in concluding that persons regularly and continuously on the county payroll could be treated as "day labor" for purposes of RCW 36.77.

Amicus curiae is in complete support of the trial court except for conclusion of law No. 8,[3] insofar as it imposes

---

[2]RCW 36.78.020 provides:

"'Standards of good practice' shall mean general and uniform practices formulated and adopted by the board relating to the administration of county roads for the several classes of counties which shall apply to engineering, maintenance, traffic control, safety, planning, programming, road classification, road inventories, budgeting and accounting procedures, equipment policies, and personnel policies."

[3]Conclusion of law No. 8 states:

"With respect to projects accomplished by day labor having a value in excess of $2,500.00, defendants have failed to comply with the requirements of RCW 39.04, et seq., by maintaining records of estimated and final costs of such projects and furnishing public notification of these by publication in a newspaper in the

public notice advertising requirements of RCW 39.04 on activities carried out under RCW 36.77.070 (concerning day labor road projects costing under $2,500).

 Considering the commissioners' first contention regarding respondents' standing, we are clear that a union local and its individual members and a contractors' association and its individual members have a distinct interest over and above the general public or a random taxpayer. They have a direct pecuniary interest in the outcome of this case. We find this matter to be more nearly comparable to *Johnson v. Moore,* 80 Wn.2d 531, 496 P.2d 334 (1972) than to *Tabor v. Moore,* 81 Wn.2d 613, 503 P.2d 736 (1972), upon which the commissioners rely. Consequently, there was no requirement that demand first be made by respondents on the Attorney General or the Prosecuting Attorney of Snohomish County to institute proceedings as a condition precedent to their initiating this action.

 The commissioners' contention that respondents were not entitled to declaratory or injunctive relief was properly rejected by the trial court. To the contrary, a declaratory action, together with the coercive remedy of injunction, is a convenient and appropriate method for settling the issues presented herein. We find the trial court's detailed explicit order well–suited to prevent the problem from continuing or again arising in Snohomish County. It is true, as the commissioners contend, that a statutory right of appeal from a decision or order of the board of county commissioners exists under RCW 36.32.330. However, respondents were not parties to the record of any of the proceedings or decisions challenged by them in this lawsuit. *See State ex rel. Mason v. Board of County Comm'rs,* 146

---

manner required by this statute. Whenever there is construction, alteration, repair or improvement other than ordinary maintenance of any County road having a true cost in excess of $2,500.00, and this work is accomplished by day labor without a call for bids, estimates of the cost must be prepared prior to commencement of the work and the County must prepare, maintain and publish true and accurate records of these estimates and actual cost of completion in the manner required by RCW 39.04, *et seq.*"

Wash. 449, 263 P. 735 (1928). Neither were they harmed by a *single* decision of the county commissioners, such that appeal would be an appropriate remedy. Rather, it was a continuing policy of the commissioners and an ongoing series of decisions by the board which adversely affected respondents, thus the remedy sought was particularly well-suited.

The granting of declaratory relief is discretionary with the trial court, and here the court properly allowed such relief. The rule previously followed by Washington with the sparse company of Indiana and Pennsylvania, that declaratory relief will not lie where any alternative remedy is available, was changed by court rule in 1967. CR 57 provides in part:

> The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.

Therefore, cases relied on by commissioners, *Reeder v. King County,* 57 Wn.2d 563, 358 P.2d 810 (1961), and those following, no longer control on this issue. Still, the courts will be circumspect in granting such relief. We find no abuse of discretion by the trial court in granting the relief here. Writs of prohibition and mandamus were dismissed on motion of the prosecutor.

■ Elements to invoke the court's declaratory power are set forth in *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 815, 514 P.2d 137 (1973), as follows:

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

We are clear that all the elements are presented by this controversy.

However, the fourth element presents an interesting issue when considered in light of the injunction. The court retained jurisdiction for purposes of enforcing the injunctive order as to future disputes which may arise, and stated in the order:

Jurisdiction of the Court is continued and alleged non–observance of the requirements imposed hereby may be brought before the Court by any party upon notice, motion and a show cause application.

We are in complete agreement with the trial court that the basis for injunctive relief exists here. There was sufficient proof of irreparable and continuing injury were the commissioners' practices to continue, and the legal remedy was inadequate as we have stated.

■ As to whether an order can be "final and conclusive" when continuing jurisdiction is retained, we find the declaratory aspect of the order declaring the rights and liabilities of the parties under applicable law is final. As to the injunctive aspect, it is proper and necessary for the court to retain jurisdiction in this case. That does not defeat declaratory jurisdiction under element 4 of *Diversified.*

Borchard does not believe that injunctive relief is necessary in an action such as this.

It has already been observed that in an action against the Government or an administrative department for money or other property or to establish rights of other kinds, a declaration serves the same purpose as coercive relief, for when an adjudication of an administrative duty has been obtained, it is rarely conceivable that coercion to compel performance of that duty is required.

E. Borchard, *Declaratory Judgments* 896 (2d ed. 1941).

However, continuing abusive practices by Snohomish County, violative of the statutory mandate, caused the trial court to find it necessary to impose injunctive relief and to retain jurisdiction to assure that the practices cease. That the combining of declaratory and coercive relief is proper and even common, is clear from Borchard. *See* Borchard, *supra* at 435–44. This merely carries out the principle that

every court has inherent power to enforce its decrees and to make such orders as may be necessary to render them effective. This principle is also codified in RCW 7.24.080.

■ The commissioners' next major contention, in effect, is that they must use their best judgment and determine for themselves whether public works should be let by contract to the private sector or accomplished by day labor by county employees. We are invited to find ways of construing the pertinent statutes to authorize such procedure. The trial court said in its conclusion of law No. 9:

Whether public work should be let by competitive bidding or performed by county employees is a policy determination for the Legislature.

We agree with the trial court.

The County also invokes the standards of good practice as formulated in WAC 136–18 and asserts that these standards should control, rather than the stricter standards imposed by the trial court. Though this would be true for other counties, as argued by amicus, the trial court has jurisdiction to enter whatever order it finds will resolve the problem, and need not be restrained by WAC 136–18. Further, since WAC 136–18 came into existence several months after the commencement of this action, its provisions do not control here. However, if the commissioners are in compliance with these standards, it would seem appropriate to present such fact to the trial court for it to determine whether that will suffice for future projects.

■ The commissioners and amicus join in arguing that the trial court erred in imposing stricter publication requirements than those required by RCW 36.77.070.[4] It appears that whatever conflict may exist between RCW 36.77.070 and RCW 39.04 (prescribing in detail the manner

---

[4]RCW 36.77.070 provides:

"If the board determines that any construction should be performed by day labor, and the estimated cost of the work exceeds twenty–five hundred dollars, it shall cause to be published in one issue of a newspaper of general circulation in the county, a brief description of the work to be done and the county road engineer's estimate of the cost thereof. At the completion of such construction, the board shall cause to be published in one issue of such a newspaper a similar brief

in which publication is to be handled and how costs should be reported for public works not let for bid and costing in excess of $2,500), we need not, and should not, read the statutes as repugnant. Repeals by implication are not favored. It can be assumed that the legislature did not intend to keep contradictory enactments on the books, or to effect so important a measure as the repeal of a law without expressing an intent to do so. Any reasonable construction which offers an escape from such a result is more likely to be in consonance with legislative intent. Since RCW 36.77-.070 is the most recent expression on the subject, and the most specific, that statute's lesser notice requirements will apply to counties' day labor road projects in excess of $2,500. RCW 39.04 applies more generally to "public works", excepting those projects specifically covered under RCW 36.77.070.

■ However, with the existent situation in Snohomish County to deal with, the court chose to follow RCW 39.04 and impose more onerous publication requirements. It was within the equity jurisdiction of the trial court to impose *whatever requirements* it believed necessary to abate the practices of the Board of County Commissioners of Snohomish County, the party before the court.

That the court followed RCW 39.04 is irrelevant; the guidelines could have been less or more strict than RCW 39.04 requires. The order applies only to Snohomish County. "When the equitable jurisdiction of the court is invoked . . . whatever relief the facts warrant will be granted." *Kreger v. Hall,* 70 Wn.2d 1002, 1008, 425 P.2d 638 (1967). The requirements in the decree are amply warranted by the facts, and the court specifically declared the rights and obligations of the parties.

description of the work together with an accurate statement of the true and complete cost of performing such construction by day labor.

"Failure to make the required publication shall subject each county commissioner to a fine of one hundred dollars for which he shall be liable individually and upon his official bond and the prosecuting attorney shall prosecute for violation of the provisions of this section and RCW 36.77.060."

Respondents cross–appeal from conclusion of law No. 4, insofar as it permits persons regularly and continuously on the county payroll to be treated as "day labor" for purposes of RCW 36.77.070. Conclusion of law No. 4 states in part:

> "Day Labor" consists of personnel carried on the County payroll working by the day and compensated on an hourly basis.

*Butchek v. Collier,* 174 Wash. 311, 24 P.2d 619 (1933), is cited by respondents in support of their contention that this definition is improper. As we read *Butchek,* it was a small and practical effort to deal with a difficult time early in the economic depression of the '30's. Acting pursuant to ordinance, the Board of Public Works of the City of Seattle was attempting to assist some of its citizens to pay their water bills by allowing them to do some needed work on a particular reservoir. Pay was limited to $4.50 per day, no one could work more than 5 days, and any unpaid water bill was deducted from wages paid. Some temporarily unemployed civil service workers sought to enjoin the prosecution of the work.

In *Butchek* at page 313 we said "'[the words] day labor,' . . . reasonably considered *as applied to this case,* are too narrow to mean that continuity of service for which civil service is peculiarly and appropriately intended." (Italics ours.) That construction was undoubtedly correct for that case at that time and for the specific circumstances there existing. It is not controlling authority; it was confined to its facts.

■ The term "day labor" appears in the 1937 state highway act (Laws of 1937, ch. 187, § 34, p. 752). Apparently there has been no occasion for this court to construe this term in the 40 years since the act became law. In the course of those years, the term "day labor" has evolved to mean "county forces" as contrasted to contractor employees. In the recently formulated standards of good practice, the County Road Administration Board (CRAB) has defined "day labor" much the same as "any construction activity performed by a county road department by means

other than by contract as specified in RCW 36.77.020 through 36.77.040." WAC 136–18–020(3). The trial court recognized this definition in its oral opinion and said in reference thereto:

My definition of day labor is close to that of [CRAB] as being those employees who are employed by daily wage by the county to do maintenance or in this case construction labor, and I don't see that the fact that these employees may have continuous employment is the governing factor or consideration so long as they are paid by the day and that they do labor on the roads.

We agree with the trial court.

Affirmed.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., and RYAN, J. Pro Tem., concur.

Reconsideration denied February 8, 1978.